BRATTON *v.* STATE.

4502                                    211 S. W. 2d 428

Opinion delivered May 24, 1948.

*Abe Collins* and *Cecil E. Johnson, Jr.,* for appellant.

*Guy E. Williams,* Attorney General, and *Oscar E. Ellis,* Assistant Attorney General, for appellee.

MINOR W. MILLWEE, Justice. Defendant was indicted and convicted for embezzlement of funds of the Temple Cotton Oil Company while employed as manager of the company's oil mill at Ashdown, Arkansas, and his punishment fixed by the jury at one year in the State Penitentiary.

G. A. Reed, representing a firm of accountants, made an audit of the oil company's records covering the period from April 1, 1942, to February 28, 1947. It was stipulated that the records of the oil company correctly reflected the figures shown by this audit. Reed testified that the petty cash record kept by defendant showed many items listed in the cash book as receipts from customers of the oil mill in the form of cash and checks as having been deposited in the bank when the bank statements failed to reflect such deposits. Copies of deposit slips kept as company records were altered so as to include the undeposited receipts to correspond with the false entries of deposits made in the cash book. These transactions were detailed by the witness and the shortages thus reflected by the audit amounted to $1,000 for the year 1945 and $3,400 for the period from January, 1945, to February, 1947. The total shortages from April, 1942, to February, 1947, amounted to $7,000.

The audit also reflected alterations in the "sales," "cash disbursements," "expense and supply" and "bank reconcilement" accounts to conceal the accumulated shortages from month to month. The entries in these records were shown to be in defendant's handwriting and were carried forward in monthly reports which he made to the Texarkana office of the company. Defendant was under bond to the oil company in the sum of $5,000, which has been paid on the basis of the audit made by Reed.

The State offered the testimony of the grand jury reporter concerning admissions made by the defendant as a witness before the grand jury investigating the charges against him. Defendant objected to this testimony on the ground that he had been subpoenaed as a witness before the grand jury. At this point the trial

court sustained the objection unless it could be shown that defendant freely and voluntarily made the statements. It was then shown that a few days prior to the convening of the grand jury, counsel for defendant requested of the prosecuting attorney that defendant and his witnesses be permitted to appear before the investigating body. This was agreed to, and counsel for defendant furnished the prosecuting attorney with a list of witnesses, including the name of defendant, who were subpoenaed to appear before the grand jury.

When the defendant appeared before the grand jury, he was told by the prosecuting attorney that he was not required to give any testimony; that it was probable that the grand jury would indict him; and any statements he desired to make would be of his own free will. After being so advised, defendant said he wanted to make a statement and proceeded to make a detailed statement to the jury. Upon this showing the trial court permitted the grand jury reporter to testify that defendant admitted to the grand jury that he made all the monthly reports of the company and had taken more than $1,000 from company funds, and that in each monthly report he concealed, or covered up, the accumulated shortages.

The principal assignment of error relied on by defendant is that the trial court erred in the admission of the testimony of the grand jury reporter. It is argued that the admissions of defendants before the grand jury were inadmissible under § 3956 of Pope's Digest, and amounted to self-incrimination in violation of Art. II, § 8 of the Constitution of Arkansas. Section 3956 of Pope's Digest reads: "*Joint offender as witness.* In all cases where two or more persons are jointly or otherwise concerned in the commission of any crime or misdemeanor, either of such persons may be sworn as a witness in relation to such crime or misdemeanor; but the testimony given by such witness shall in no instance be used against him in any criminal prosecution for the same offense." Section 8 of Art. II of the state Constitution provides that no person shall be compelled in a criminal case to be a witness against himself.

Defendant relies on the cases of *Bates* v. *State,* 164 Ark. 240, 261 S. W. 315, and *Baker* v. *State,* 177 Ark. 13, 5 S. W. 2d 337. These cases involve situations where a defendant either refused or was compelled to answer in-criminating questions in an involuntary appearance before a grand jury in cases where accused was jointly charged or concerned with others in the commission of an offense. In the Bates case the court said the effect of the constitutional prohibition "is to prevent anyone from being compelled to give testimony in a criminal case which could be used to convict him of a crime." The element of compulsion is wholly lacking in the case at bar. It is true that defendant was served with a subpoena to appear before the grand jury, but this was done at the request of his counsel. It is undisputed that defendant not only voluntarily appeared before the jury, but solicited the opportunity to do so. It is also undisputed that the statement to the grand jury was freely and voluntarily made by defendant.

The facts here relative to the admission or confession of defendant before the grand jury are somewhat similar to those involved in *Dunham* v. *State,* 207 Ark. 472, 181 S. W. 2d 242. It was there held that a voluntary written confession of accused made before a coroner's inquest was admissible in evidence on the trial of accused for homicide even though her appearance at the inquest was involuntary. The appellant in that case also relied on § 3956, Pope's Digest, *supra.* In declaring the statute inapplicable, the court said: "This statute has no application, as appellant is not jointly charged with any other person and she was not called as a witness against any other person." So here, defendant was not jointly charged, or concerned, with another nor was he called as a witness against any other person.

In Wharton's Criminal Evidence (11th Ed.), Vol. 2, § 586, it is said: "The rule is well established that confessions and declarations voluntarily made by a witness before a grand jury may be introduced in evidence in a subsequent criminal prosecution in which the witness is the defendant." See, also, § 630 of the same work and

volume; 22 C. J. S., Criminal Law, § 830, p. 1453; Anno. 9 L. R. A., N. S. 533; 27 A. L. R. 151. In *Harshaw v. State*, 94 Ark. 343, 127 S. W. 745, it was held that a written confession freely and voluntarily made and sworn to before a justice of the peace was admissible in evidence against the defendant at his trial on a charge of forgery. The statement of defendant to the grand jurors in the instant case meets all the requirements of the above rule and it was admissible in evidence against him.

It is next insisted that the court erred in refusing to give defendant's requested instruction No. 8, which reads as follows: "If after a careful consideration of all the evidence you believe and find it has been customary for the employees in the office of Temple Cotton Oil Company at its plant in Ashdown, Arkansas, to borrow money from the cash drawer at said plant and place slips therein in lieu of said cash so borrowed and that said custom was known to or acquiesced in by the management of said company and that the withdrawals of cash by the defendant complained of herein, if any, were made by him pursuant to this custom and without any fraudulent or felonious intent at the time on his part to embezzle said funds or convert them to his own use; or if you have a reasonable doubt as to whether or not this is true you must acquit the defendant."

Defendant introduced several witnesses who testified that cash advances were made to all employees of the mill applying therefor by having the employee sign a voucher for the amount advanced, which was placed in the cash box kept in the safe. These advances were repaid each pay-day either by deducting them from the employee's pay check or the employee giving his own check for the amount advanced. This custom was followed by other companies where the witnesses had been employed. Two employees who worked in the office with appellant followed this practice. One of these was secretary and treasurer of the company, and also engaged in the trucking business with another officer of the company at Texarkana. The partnership hauled products for the mill and also for the public generally. The oil company fre-

quently made advances by check to the local partner in the operation of the partnership business and an account was regularly maintained for this purpose. This account was kept current and there were no shortages reflected in the account by the audit. The two office employees were positive in their testimony that all advances made to them were regularly and duly repaid; that they knew nothing about the shortages in the accounts maintained by defendant, and had nothing to do with the alteration of the records disclosed by the audit.

The defendant did not testify at the trial. The evidence does not disclose to what extent, if any, he engaged in the practice of obtaining cash advances from the cash box, or whether he ever "borrowed" money from the company. The evidence did not, therefore, warrant the giving of the requested instruction. The instruction was also misleading in that the jury's consideration was thereby limited to withdrawals of cash from the cash box when the audit discloses that a substantial portion of the shortages resulted from the failure to deposit customers' checks. Moreover, the jury were told in other instructions that it was incumbent on the state to show beyond a reasonable doubt that defendant fraudulently embezzled and converted the funds of the oil company to his own use without the consent or acquiescence of the company. The requested instruction was also improper in that it authorized an acquittal because of a reasonable doubt as to a particular part of the evidence when such doubt should arise from a consideration of all the evidence. *Foster* v. *State,* 179 Ark. 1084, 20 S. W. 2d 118. There was no error in the court's refusal to give the requested instruction.

Outstanding citizens of Little River county testified to the good reputation of the defendant. A jury composed of other outstanding citizens of the county found him guilty under evidence that is substantial and sufficient to support the verdict. The court fully and fairly instructed the jury. The points of law embraced in other instruc-

tions requested by the defendant and refused by the court were sufficiently covered in those given.

We find no prejudicial error, and the judgment is affirmed.