275 S.W.2d 887 (1955)
Andrew Jackson ROWE, Appellant,
v.
STATE of Arkansas, Appellee.
No. 4781.
Supreme Court of Arkansas.
February 28, 1955.
Rehearing Denied March 28, 1955.
Kaneaster Hodges and Ras Priest, Newport, for appellant.
Tom Gentry, Atty. Gen, Thorp Thomas, Asst. Atty. Gen, for appellee.
*888 GRIFFIN SMITH, Chief Justice.
Andrew Jackson Rowe has appealed from two judgments. The first carries a sentence of 21 years for robbery; the second, seven years for burglary. The sentences are to run consecutively.
The formal information charged the defendant with having entered the Bank of Swifton December 1, 1953 and taking approximately $8,000. Rowe and John Stanley were arrested at a tourist court in Hoxie where they had registered under fictitious names. All but about $100 of the money claimed by the bank was recovered. Rowe signed a confession, but did not testify. Stanley was a witness against his criminal associate and detailed essential facts relating to activities of the two.
The motion for a new trial contains 22 assignments. Most of the matters to which attention is directed are of a class heretofore held untenable or non-prejudicial. The first eight assignments relate to the court's action in permitting jurors to serve when, from the defendant's point of view, answers given on their voir dire disclosed prejudice, fixed opinion as to the defendant's guilt, or they were in some position or relationship to the bank or others in interesta relationship calculated to influence jury action irrespective of the evidence.
While it is true that some of the veniremen said that they had formed tentative opinions based upon newspaper reports or what some one had told them, all who were accepted stated that they could and would be guided solely by the testimony, giving to the defendant the benefit of all doubts that the law defines. There was no error in accepting these men. It is no longer practicable in an intelligent society to select jurors from a psychological vacuum or from a stratum where information common to the community as a whole is lacking.
The ninth and tenth assignments question actions of the court in permitting witnesses Rayburn and Wilcox to testify that bloodhounds were used in an attempt to frail the robbers, no showing having been made that the dogs were properly trained, and absent evidence that Rowe was apprehended by reason of these activities. We agree with appellant that the testimony was immaterial. It is urged that the purpose of this saga was to bring to the immediate attention of jurors thrilling phases of a manhunt, thus effectuating an interest in the day of action, with the excitement and energy attending diligence of officers who were trying to apprehend the culprits.
We have frequently held that exhibits not essential to a clear understanding of a defendant's connection with or relation to the crime alleged shoujd be excluded when reasonable minds would agree that the purpose to be served or the probable result would be to unduly arouse passion and prejudice. But we have not held that a jury should be denied information intended to place the fact-finders in a position to understand what actually occurred within a reasonable period preceding the crime, or following its commission. The use of bloodhounds is in no sense unusual. Here trailing activities did not identify the defendant or form a link pointing to his guilt. We know of no rule announcing prejudice in such circumstances through failure of the state to first show that the dogs were qualified, or that they were experts.
It is next objected (assignment 11) that State Policeman Lutes ought not to have testified that Rowe told him, while in custody, that if he had been overtaken by the bloodhounds "I would have killed you like a G___d___dog". The action of one accused in fleeing from the scene of crime is a circumstance to be considered with other evidence in determining probable guilt. Smith v. State, 218 Ark. 725, 238 S.W.2d 649. A corollary would seem to be that where flight is established the declaration of one who says he would have defended himself while evading arrest is likewise admissible. See Reed v. State, 102 Ark. 525, 145 S.W. 206; Wooten v. State, 220 Ark. 750, 249 S.W.2d 964.
Assignments 12 and 13 require consideration of the court's action in permitting the *889 jury to receive the defendant's written confession, which was sworn to. This will be discussed presently.
Assignment 14 asks a review of the court's action in allowing a witness to testify that the defendant, while in jail, wrote notes that were intercepted. The court instructed that these should not be considered. The admonition was sufficient.
Assignments IS, 16, 17, and 19 were objections to introduction of proof that the defendant had committed other crimes. The information charged that Rowe was an habitual criminal. Act 228 of 1953, Ark.Stats. Supplement, § 43-2330. Although the defendant was not convicted under the habitual criminal count, the accusation permitted introduction of evidence responsive to the charge, hence error cannot be predicated upon its consideration.
The final argument is that the confession was inadmissible as a matter of law because the prosecuting attorney administered an oath to the defendant.
The Defendant's Confession.Act 160 of 1937, Ark.Stats. § 43-801, invests the prosecuting attorney with power to issue subpoenaes when criminal matters are being investigated, "* * * and [he] shall have authority to administer oaths for the purpose of taking the testimony of witnesses subpoenaed before [him]; such oath when administered by the prosecuting attorney or his deputy shall have the same effect as if administered by the foreman of the grand jury. * * *"
An enactment taken from chapter 45 of the Revised Statutes has been brought forward as § 43-915, Ark.Stats.1947 revision: ___"In all cases where two [2] or more persons are jointly or otherwise concerned in the commission of any crime or misdemeanor, either of such persons may be sworn as a witness in relation to such crime or misdemeanor, but the testimony given by such witness shall in no instance be used against him in any criminal prosecution for the same offense."
Appellant contends that the general assembly, in authorizing prosecuting attorneys to administer oaths and providing that the effect would be gauged by some of the language used in the Revised Statutes, intended to render inadmissible any testimony given by a witness subpoenaed or otherwise procured when the prosecutor saw fit to enjoin upon such witness the solemn obligations of an oath.
It will be observed that § 43-915 mentions persons who are "jointly or otherwise concerned" in the commission of a crime, while § 43-801 does not refer to persons "jointly or otherwise concerned"; nor does this section by any express language prohibit the use of such testimony. If rendered inadmissible it must come about because of the reference to effect of the oaththe same as if administered by the foreman of the grand jury. [Rowe was charged in an information that did not name Stanley or any other person].
An opinion written by Mr. Justice Wood in 1907 reversed a conviction because the appellant's testimony, taken before an examining magistrate where he was jointly charged with two others, was used against him. Marshall v. State, 84 Ark. 88, at pages 91-92; 104 S.W. 934. The court gave the instruction copied in the margin,[1] which was held to be a correct declaration of the law, but reversible error was predicated upon use of the defendant's confession made at a time when he and two others were "jointly or otherwise concerned", an oath having been administered.
In Dunham v. State, 207 Ark. 472, 181 S.W.2d 242, 244, the defendant in her appeal *890 relied upon two grounds. At the coroner's inquest she was sworn as a witness, then confessed that she killed her sister by shooting her with a shotgun. In Judge McHaney's opinion for the court it is stated that but for the confession there could have been no conviction. The twofold objections were: First, it contravened that part of Art. 2, § 8, of the state constitution where it is provided, "`* * * * nor shall any person be compelled, in any criminal case, to be a witness against himself. * * *"` Secondly, § 3596 of Pope's Digest (now § 43-915, Ark.Stats.) was violated.
After holding inapplicable the constitutional objection the opinion says that the Pope's Digest section "* * * relates to cases where two or more persons are jointly concerned in the commission of any crime * * *. This statute has no application, as appellant is not jointly charged with any other person and she was not called as a witness against any other person. * * She was convicted on the voluntary statement made by her at the coroner's inquest, which, as we have already stated, was admissible".
In the case at bar a clearer picture of appellant's position is retrospectively shown by the following statement, copied from his brief: "According to the testimony * * * Bill Arnold, the prosecuting attorney, advised the prisoners that they did not have to make a statement. He promised them nothing but the limit of the law. Stanley refused to make a statement".
The effect of cases like State v. Roberts, 148 Ark. 328, 230 S.W. 15, is that a witness called before the grand jury (and now by analogy one who is called by the prosecuting attorney) may not refuse to testify on the ground that information given might tend to incriminate him in respect of the subject-matter under investigation. This is true because the statute expressly prohibits use of information so obtained if the witness is made a defendant in the same transaction.
Section 43-915 is cited as § 3956 of Pope's Digest in Bratton v. State, 213 Ark. 537, 211 S.W.2d 428, 430. There, as defendant below, Bratton was subpoenaed to appear before the grand jury where he gave testimony regarding activities resulting in his indictment and conviction on a charge of embezzlement. On appeal it was urged that because a subpoenae had issued-at the defendant's request, as it was shown statements in the nature of a confession could not be read to the jury by the reporter who acted for the grand jury. In rejecting this contention Dunham v. State is cited, with this comment: "So here, defendant was not jointly charged, or concerned, with another nor was he called as a witness against any other person." Cf. Pugh v. State, 213 Ark. 374, 210 S.W.2d 789; Ezell v. State, 217 Ark. 94, 229 S.W.2d 32; Baker v. State, 177 Ark. 13, 5 S.W.2d 337.
In State v. Bach Liquor Company, 67 Ark. 163, 55 S.W. 854, 856, we held that the word "concerned", used in connection with two or more persons dealt with in ch. 45 of the Revised Statutes, meant participants: thus, `"where two or more persons are jointly or otherwise participants in the commission of any crime or misdemeanor'".
The appellant, in Harshaw v. State, 94 Ark. 343, 127 S.W. 745, was sworn by a justice of the peace and made a confession. He was indicted for forgery and at trial objected to introduction of the confession. While the reported opinion does not set out all of the facts, an examination of the bill of exceptions shows that the protest was brought forward in appellant's motion for a new trial, hence the matter was before this court. There is nothing to indicate that the justice of the peace was acting as an examining magistrate, but the idea inferable from the proceedings is that the defendant objected to the confession on the ground of self-incrimination. The conviction was affirmed.
Our latest case containing a reference to § 43-801, Act 160 of 1937, is Taylor v. State, 220 Ark. 953, 251 S.W.2d 588, 590. A conviction was reversed because a speciman of the handwriting of appellant's wife was allowed to go to the jury in circumstances *891 making the paper serve as evidence against the woman's husband. There is this statement: "We are loathe to approve a method of legal procedure that might conceivably be used to trap or coerce a person into discarding a right or privilege guaranteed by law."
Applying this rule, let us consider whether the principle applies to the case at bar. That there was no element of coercion or entrapment is sufficiently certified by counsel for appellant in their express disclaimer of force, violence, threats or promises "in order to induce or coerce" the confession.
Appellant's partner in crime was called at the same time Rowe responded and was informed that he was not required to make a statement. He understood the admonition and declined to answer questions. Rowe took a different view and voluntarily disclosed what had occurred. To hold that this is not a voluntary confession merely because the prosecuting attorney administered an oath that the accused subscribed to after being informed that he was not under compulsion and that he could expect nothing more favorable than the law's full penaltyto say it was the intention of the general assembly, in promulgating Act 160, to read into the statute a design that was not expressed, not necessarily implied, and to interpolate a purpose strangely at variance from the decisions we have cited,to reach this conclusion would be a departure from statutory construction that we are not at liberty to embrace.
The thing courts are concerned with in matters related to the issue here presented is a scrupulous protection against compulsory self-incrimination. Protection is broadly conferred by § 8 of art. 2 of the constitution, and in election cases by § 9 of art. 3. If a purpose not heretofore defined is to be assigned to the pertinent portion of chapter 45 of the Revised Statutes, that objective is clearly one to facilitate criminal investigations through use of testimony by a participant. Information thus obtained may be used against persons other than the witness, but where compulsion is employed in a process that inevitably or incidentally incriminates an affiant, the law's protection is not a vain thing. In an appropriate case either the constitution or statutes may be invoked; but here there was no compulsion or duressa fact recognized by the defendant himself.
Affirmed.
ROBINSON, J., dissents.
WARD, J., concurs.
WARD, Justice (concurring).
I agree with the result reached by the majority and also agree with much of the reasoning set forth in the opinion but I feel compelled to write this concurrence in order to emphasize the real basis upon which I think the opinion should have rested.
In my opinion the confession of appellant was admissible in evidence for the sole reason that it was shown to be voluntarily given. The fact that the statute gives the prosecuting attorney a right to subpoena and swear witnesses is no reason tending to make the confession in question admissible. Neither does the fact that appellant was not jointly indicted form any basis or reason for admitting the confession. I make this latter statement because the opinion appears to assign this as a reason on the authority of Dunham v. State, 207 Ark. 472, 181 S.W.2d 242, and Bratton v. State, 213 Ark. 537, 211 S.W.2d 428. In those cases the court did refer rather loosely, I think, to the fact that there was no joint indictment but the real decision in both instances rested squarely on the basis that the confession was free and voluntary. Ark.Stats. § 43-915 cited in the majority opinion is to the effect that where two or more people are jointly concerned in the commission of a crime the testimony of one may be taken and used against the other but cannot be used against himself. The protection which the law throws around *892 one making a confession [that it must be voluntary] is always available to a defendant whether he is jointly charged or not.
The underlying reason for expressing the above views is my fear that prosecuting attorneys, however conscientious, might, by a wrong conception of the meaning of § 43-801, use this statute to induce an accused to make a confession when he didn't desire to do so. It is easy to imagine that an illiterate accused, subpoenaed, brought before a prosecuting attorney and sworn to tell the whole truth, might be so over-awed by official atmosphere and surroundings that he would make a confession against his real desire to do so. If such a situation could amount to undue influence [and I think it might], it would be of such a nature that rebuttal by oral testimony would be most difficult if not impossible. It must be borne in mind that the intent and letter of § 43-801 is to give prosecuting attorneys the right to subpoena a person [and accused] as a witness to obtain evidence [against some other person]___ notto obtain a confession.
Consequently, I think it is highly important to make clear that a confession obtained under the above circumstances is not admissible in evidence against the confessor unless the record affirmatively shows, as it does here, that the confessor was first informed that (a) he was under no obligation to make any statement unless he wanted to do so and (b) any statement he did make would be used against him, and (c) that the statement or confession was voluntary as that word is defined by our decisions.
ROBINSON, Justice (dissenting).
Over objection and exceptions, the state was permitted to introduce at the trial in circuit court the testimony of the defendant taken before the prosecuting attorney. The prosecuting attorney was in a position to argue it to the jury as the sworn testimony of the defendant, although the defendant did not testify at the trial. In my opinion this was testimony taken by the prosecuting attorney in accordance with the statute authorizing the taking of such testimony. Ark.Stats. § 43-801 provides: "The prosecuting attorneys and their deputi * * * shall have authority to administer oaths for the purpose of taking the testimony of witnesses subpoenaed before them; such oath when administered by the prosecuting attorney or his deputy shall have the same effect as if administered by the foreman of the grand jury." The accused was sworn to tell the truth, the whole truth, and nothing but the truth; this was done in the sheriff's office before any charge was ever filed against the defendant. At the time of the trial of the case in circuit court the state proved by the sheriff that the oath was administered by the prosecuting attorney to the accused at the time his testimony was taken. Such evidence of the administration of the oath could have been introduced only for the purpose of adding verity to the testimony of the defendant. The prosecuting attorney does not have authority to administer oaths generally; there is only one instance in which he may legally administer an oath, and that is when he is taking testimony from a witness as authorized by Ark.Stats. § 43-801. He has no authority to administer an oath to one giving a confession. The statute is plain and explicit that "such oath when administered by the prosecuting attorney or his deputy shall have the same effect as if administered by the foreman of the grand jury." It necessarily follows that the question is, what would be the effect of the defendant being brought before the grand jury in custody of the sheriff, placed under oath by the foreman of the grand jury, and his testimony taken in those circumstances?
The Supreme Court of the United States said in Counselman v. Hitchcock, 142 U.S. 547, 12 S.Ct. 195, 198, 35 L.Ed. 1110, "It follows that any evidence which might have been obtained from Counselman by means of his examination before the grand jury could not be given in evidence nor used against him or his property in any court *893 of the United States, in any criminal proceeding, or for the enforcement of any penalty or forfeiture."
In State v. Rixon, 180 Minn. 573, 231 N.W. 217, 218, 68 A.L.R. 1501, it is said: "It is settled law in this state that, where a grand jury by subpoena compels the accused to attend and testify concerning his connection with the crime under investigation, an indictment returned by such jury against such accused will be quashed, because in violation of our constitutional guaranty that no person `shall be compelled in any criminal case to be a witness against himself."
In the case at bar the defendant was in custody, accused of the crime. His part in the crime, along with the part played by John Stanley, who was also involved in the bank robbery, was being investigated. It seems to be the rule that if the testimony given by the witness before the grand jury is upon a general investigation, then such testimony can be the basis of an indictment; but if on the other hand the investigation before the grand jury is a proceeding against the defendant, his testimony can not be used as a basis for the indictment, much less used later on in the trial of the case in circuit court.
In People v. Bermel, 71 Misc. 356, 128 N.Y.S. 524, 525, the court said: "But where, on the other hand, the investigation before the grand jury is a proceeding against him, or, being ostensibly a general investigation, is, in fact, as shown by the circumstances and evidence, a proceeding against him, then the defendant's constitutional right is violated if he be subpoenaed before the grand jury, sworn and questioned, though he makes no claim of privilege or exemption. Briefly stated, if the person testifying is a mere witness, he must claim his privilege on the ground that his answers will incriminate him, whereas, if he be in fact the party proceeded against, he cannot be subpoenaed and sworn, even though he claim no privilege."
We have found no case holding that a defendant can be brought before the grand jury in a proceeding directed against him, his testimony taken, and later his testimony be used against him in the trial of the case. In U. S. v. Bell, C.C, 81 F. 830, 842, it is said in speaking of the testimony taken before a pension examiner: "It will not do to rely upon the theory that every citizen can take care of himself in such a purely inquisitorial examination. It is not like the examination that takes place in open court, in the presence of counsel and the bar, and before judges, who are in the habit of exercising the power, if not following the duty, of warning every witness against the danger which confronts him when he is called upon to testify about incriminating matters. And, owing to this particular nature and character of the examination itself, it needs more watching to prevent an encroachment upon the citizen's constitutional privileges".
In my opinion if the defendant here had been taken by the sheriff to the grand jury room, sworn by the foreman of the grand jury, and testified as he did before the prosecuting attorney, such testimony could not have been used against him in the trial in the circuit court. The statute giving the prosecutor the authority to administer oaths and to take the testimony of witnesses, Ark.Stats. § 43-801, in plain language states that such oath when administered by the prosecuting attorney shall have the same effect as if administered by the foreman of the grand jury. Of course, if the defendant at his own request is permitted to appear before the grand jury and testify, as was the case in Bratton v. State, 213 Ark. 537, 211 S.W.2d 428, and Eastling v. State, 69 Ark. 189, 62 S.W. 584, such testimony may be used by the state. In the Bratton case [213 Ark. 537, 211 S.W.2d 429] it is said: "It is undisputed that defendant not only voluntarily appeared before the jury but solicited the opportunity to do so." In the Eastling case the defendant also asked for permission to testify. Therefore the Bratton and Eastling cases are not in point with the case at bar. No one contends here that this defendant voluntarily appeared in the sheriff's office and requested an opportunity *894 to make a statement to the prosecuting attorney; in fact the defendant was under arrest in charge of the sheriff.
The majority cite Harshaw v. State, 94 Ark. 343, 127 S.W. 745, and appear to hold that a defendant who has not voluntarily taken the witness stand can be sworn by a justice of the peace while acting in his official capacity as such, and whatever statements are thus extracted from the defendant can later be used against him in a trial in circuit court. As I read the Harshaw case, the point involved in the case at bar was not presented to the court in that case. In the Harshaw case it is not shown that the defendant did not voluntarily take the witness stand in the hearing before the justice of the peace. In fact, it is not shown that the justice of the peace was acting as such at the time of taking the testimony of the defendant. In the Harshaw case it is merely said: "In addition, appellant is shown to have made a free and voluntary confession, which was reduced to writing by a justice of the peace and sworn to by appellant * * *. As the confession is shown to have `been made freely and voluntarily, it was admissible." No circumstances in relation to obtaining the confession are shown. This court merely stated, "As the confession is shown to have been made freely and voluntarily, it was admissible."
The majority also cites Dunham v. State, 207 Ark. 472, 181 S.W.2d 242. There testimony freely and voluntarily given by one at a coroner's inquest was used at the trial of such person in circuit court. The opinion specifically points out that the accused was warned that she did not have to testify. In the case at bar the defendant was not warned that he did not have to testify. The Dunham case is merely in line with Bratton v. State, supra, and Eastling v. State, supra. Moreover, it is pointed out in the Dunham case that no one except the defendant on trial was concerned with the commission of the offense, and therefore that § 3956 of Pope's Digest, Ark. Stats. § 43-915, is not applicable.
In 27 Am.Jur. 706 it is said: "Although informations are, of course, not the creatures of grand juries, but of prosecuting attorneys, they are, in general, governed by the same rules as indictments in respect of the effect of selfincriminating testimony by the accused on the validity of the information. It has been held, in effect, that an information is invalid where it is based upon involuntary selfincriminating testimony."
The rule appears to be well established that if, at the time one is required to give testimony before a grand jury, he is not accused of the offense, then whatever he may say can be used as a basis for an indictment or may `be used subsequently in the trial of the case. But on the other hand, if at the time of extracting such testimony from him, he is actually accused of the offense, then no testimony he gives can be used as a basis for indictment or in the trial court. In Ann.Cas.1914C, 418 it is said: "There is, however, no difference in principle between a motion to quash an information based on selfincriminating evidence of the accused on a preliminary examination and a motion to quash an indictment which is based on testimony given by the indicted person before the grand jury. Motions of the latter kind have been under consideration in a number of cases. It was held in State v. Duncan, 78 Vt. 364 [63 A. 225], 6 Ann.Cas. 602, 112 Am.St. Rep. 922, 4 L.R.A.,N.S., 1144, that an indictment will not be quashed on the ground that the accused gave selfincriminating evidence before the grand jury, if he testified without claiming his constitutional privilege; and this is so though he was not cautioned before testifying, where it does not appear that at the time he was charged with or suspected of the crime named in the indictment. The law appears to be that where a person not charged with any criminal offense is required to appear before a grand jury and is there interrogated and testifies without objection, an indictment against him found on his own testimony is not invalid on the ground that such use of his testimony is a violation of *895 the constitutional right that no person shall be compelled to testify against himself. On the other hand where a person in custody charged with crime is compelled to give testimony before the grand jury which is made the basis of an indictment against him, the indictment should be quashed. See the cases cited in the note to State v. Duncan, 6 Ann.Cas. 602. Several recent cases are to the same effect. State v. Bramlett (Miss.) 47 So. 433; People v. Burke, 72 Misc. 336, 131 N.Y.S. 122; Commonwealth v. Bolger, 229 Pa. 597, 79 A. 113; [Id.] 42 Pa.Super. 115. See also People v. Steinhardt, 47 Misc. 252, 93 N.Y.S. 1026; People v. Elite Distributing Co, 76 Misc. 577, 137 N.Y.S. 235."
There is still another reason why the testimony given by the defendant Rowe before the prosecuting attorney was inadmissible in the trial. Ark.Stats. § 43-915 provides : "In all cases where two [2] or more persons are jointly or otherwise concerned in the commission of any crime or misdemeanor, either of such persons may be sworn as a witness in relation to such crime or misdemeanor, but the testimony given by such witness shall in no instance be used against him in any criminal prosecution for the same offense."
This point is controlled by two cases heretofore decided by this court. Lockett v. State, 145 Ark. 415, 224 S.W. 952, 953, was a contempt proceeding; appellant Lockett had refused to answer questions before the grand jury on the ground that they might be incriminating to himself. In holding that he was guilty of contempt, this court said: "Appellant next insists that the judgment should be quashed because an answer to the question would incriminate him. Fraudulently issuing assessments for the purpose of enabling parties to vote, if a crime, necessarily involved others in the crime. This being the case, no answer made by appellant could have been used against him in a criminal prosecution for the same offense. He was afforded ample protection under section 3087 of Kirby's Digest". Ark.Stats. § 43-915.
In the case at bar the record shows that one John Stanley was involved in the perpetration of the crime along with the defendant in this case. The record shows conclusively that they were both arrested at the same time and place on the same charge. Hence, according to Lockett v. State, supra, if the foreman of the grand jury administered an oath to this defendant and took his testimony, such testimony could not have been used against him in the trial in the circuit court. Likewise the testimony taken from him by the prosecuting attorney could not be used against him in the circuit court. As heretofore pointed out, Ark.Stats. § 43-801 provides "such oath when administered by the prosecuting attorney or his deputy shall have the same effect as if administered by the foreman of the grand jury"; and under the holding in the Lockett case such testimony could not be used against the defendant on trial in the circuit court.
In Marshall v. State, 84 Ark. 88, 104 S.W. 934, 935, the defendant Marshall was charged alone in an indictment for the crimes of burglary and grand larceny. Marshall and two others were jointly concerned in the offense of burglary. Marshall alone had testified in the justice of the peace court and had confessed his own guilt and involved two others who were tried separately; but all were involved in the same offense. This court said: "The ruling of the court in permitting the testimony of appellant taken before the examining court to be used against him on his present trial was in plain derogation of the above statute, and was prejudicial error, for which the judgment must be reversed, and the cause remanded for a new trial." The testimony of Marshall before the justice of the peace court was used in binding over to await the action of the grand jury the other two persons charged with the offense. It is not shown in the present case whether Rowe's testimony before the prosecuting attorney was used as the basis of a felony information against John Stanley, but it could have been so used. There is no distinction between the Marshall case and the case at bar with *896 the exception that in the Marshall case the testimony given by the defendant was before a justice of the peace whereas in the present case the testimony given by Rowe was before the prosecuting attorney after Rowe was sworn to tell the truth, the whole truth, and nothing but the truth.
In conclusion, it is my opinion that the testimony given by the defendant before the prosecuting attorney was inadmissible, first because such sworn testimony is only authorized by Ark.Stats. § 43-801; and according to the provisions of this statute the taking of testimony in the circumstances shown here is the same as if the testimony had been given before the grand jury; and according to the great weight of authority, if not all the authority, such testimony can not be used against the defendant in his trial in circuit court. Next, to use the testimony against the defendant in the trial court is in derogation of his rights as set out in Ark.Stats. § 43-915 and specifically dealt with in Marshall v. State, supra. For these reasons I respectfully dissent.
NOTES
[1] "`The evidence in this case is founded upon confessions made by defendant. Where a party commits a crime, and then confesses freely and voluntarily, and without any promise of hope or reward or without any fear of punishment, then confessions are admissible and sufficient under the law to have a conviction. Confessions, it is true, are always to be received with caution; but they are taken with all of the facts and circumstances in the case, and coupled with the additional proof that a crime has been committed."